# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**NATHAN JENKINS, #10914-002**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:15-cv-908-WHB-JCG**

**UNITED STATES OF AMERICA, et al**                          **DEFENDANTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT are three motions: a Motion to Dismiss (ECF No. 13) filed by Defendant Anthony Chambers; a Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 16) filed by Defendant Norma Natal-Castro; and a Motion to Dismiss, or in the Alternative (ECF No. 18) for Summary Judgment, filed by United States of America. Plaintiff Nathan Jenkins filed responses in opposition to each (ECF No. 37); (ECF No. 24); (ECF No. 25), and Defendants filed replies (ECF No. 40); (ECF No. 28); (ECF No. 29).

Having considered the submissions of the parties, the record as a whole, and relevant law, the Court recommends that Defendants' Motions (ECF No. 13); (ECF No. 16); (ECF No. 18) be GRANTED. Accordingly, Plaintiff's claims against each defendant should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

A. <u>Procedural History</u>

Plaintiff Nathan Jenkins filed his Complaint (ECF No. 1) on December 17, 2015, asserting negligence claims under the Federal Tort Claims Act (FTCA), 28

U.S.C. § 1346, and violations of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Mr. Jenkins is currently an inmate in the custody of the Federal Bureau of Prisons at the Federal Correctional Facility in Yazoo City, Mississippi (FCC Yazoo). Plaintiff proceeds *pro se*.

Plaintiff's original Complaint (ECF No. 1) named, as Defendants, the United States of America, the Federal Bureau of Prisons, FCI Yazoo City Medium Security Prison, Dr. Anthony Chambers, Dr. Norma Natal-Castro, Lavonne Bose, and Michaela Chano. However, Plaintiff voluntarily dismissed his *Bivens* claims against Lavonne Bose and Michaela Chano because "both of these individuals to the suit were acting in the duty of the United States at the time of the incident." (ECF No. 12). The Court granted Plaintiff's Motion (ECF No. 12) and dismissed Bose and Chano from the suit because the United States of America had already substituted itself as defendant for all remaining negligence claims against them, which arose under the FTCA. (ECF No. 31).

On April 21, 2016, Defendant Anthony Chambers filed his Motion to Dismiss (ECF No. 13). Defendants Norma Natal-Castro and United States of America filed their Motions to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 16); (ECF No. 18) on April 29, 2016.

B. Facts

The material facts are not in dispute.[1] Plaintiff states that, on May 24, 2013, he awoke with blurred and distorted vision and went to sick call where he informed Nurse Michaela Chano of the issues with his vision. (ECF No. 1, at 2). Nurse Chano administered a vision test and Plaintiff's visual acuity in both eyes registered at 20/70. (ECF No. 16-2, at 47). Based on these results, Plaintiff saw Dr. Natal-Castro for an optometry consultation on May 28, 2013. *Id.* at 46; (ECF No. 1, at 2). A consultation referral for Plaintiff to see a contract optometrist was generated the same day. (ECF No. 16-2, at 47).

On June 6, 2013, Plaintiff emailed Dr. Natal-Castro to ask when he would get to see an optometrist because his vision was "getting worse by the day." (ECF No. 1-1, at 13). Plaintiff was seen by a contract optometrist, Dr. Parker, on June 24, 2013, who determined that Plaintiff had suffered a retinal hemorrhage in his left eye and needed to be treated by a retinal specialist (an ophthalmologist) as soon as possible. (ECF No. 16-2, at 43). Dr. Natal-Castro reviewed Dr. Parker's findings the same day, generated a consultation referral for Plaintiff to see an ophthalmologist "ASAP," and authorized Plaintiff to wear an eye patch over his left eye. *Id.* Dr. Chambers, the clinical director at FCI Yazoo, was notified by Dr. Natal-Castro and concurred with Dr. Parker's findings and recommendations. *Id.* at 42-43.

---

[1] Defendants and Plaintiff dispute the extent to which Plaintiff's vision in his left eye remains impaired as a result of the enlarged blood vessels that developed in his left eye and the alleged delay in the treatment he received; however, because the Court finds Plaintiff's claims to be deficient notwithstanding this disagreement, the record is appropriate for summary judgment.

On June 26, 2013, Plaintiff emailed Dr. Natal-Castro to ask if an appointment had been made for him to see an ophthalmologist. (ECF No. 1-1, at 24). Dr. Natal-Castro replied stating that a consultation referral had been generated. *Id.* Plaintiff's upcoming ophthalmologist appointment was again noted during Plaintiff's hyperlipidemia-related chronic care appointment with Dr. Natal-Castro on July 9, 2013. (ECF No. 16-2, at 38-41).

On July 16, 2013, Plaintiff saw Dr. McMillan, a contract ophthalmologist, who confirmed that Plaintiff had a suffered retinal hemorrhage resulting from "a membrane of blood vessels growing beneath the retina through a defect in the pigment layer." (ECF No. 16-4, at 5). Dr. McMillan said that the defect in the pigment layer was the result of histoplasmosis,[2] which probably stemmed from an infection he had as a child.[3] *Id.* Dr. McMillan gave Plaintiff an Avastin injection in his left eye and prescribed a course of treatment that included follow-up appointments and Avastin injections. *Id.* Plaintiff was seen by Dr. McMillan for follow-up visits on November 7, 2013, December 5, 2013, January 16, 2014, March 13, 2014, June 12, 2014, and October 30, 2014. *Id.* at 8-28. As of his October 30, 2014 visit, Dr. McMillan noted that Plaintiff's condition had remained the same

---

[2] Dr. McMillan described histoplasmosis as a condition where "antibodies attack the retina, thinking it is the histo. As a result, you have scars that blood vessels are growing through and have hemorrhaged." (ECF No. 16-4, at 5). He further indicated that this condition is common among people living in the Mississippi River Valley. *Id.*

[3] Dr. McMillan also noted that Plaintiff has previously suffered "numerous head injuries and concussions" from a motor cycle injury in 1978, a motor vehicle accident in 1999, and blunt force trauma to his left eye in April 2011 or 2012 (which specifically resulted in sub-conjunctival hemorrhaging in his left eye). (ECF No. 16-4, at 1). Plaintiff denied any change in his vision as a result of these incidents. *Id.*

4

since his last visit, "with good days and bad."[4] *Id.* at 28. His visual acuity in his left eye was measured at 20/30 for distance and 20/20 for near. *Id.* at 27.

## II. DISCUSSION

Plaintiff filed this law suit pursuant to the FTCA – which waives the Federal Government's sovereign immunity with regard to suits in tort stemming from the conduct of a federal employee acting within the scope of employment, 28 U.S.C. § 1346 – and *Bivens* – which provides monetary and injunctive relief for the deprivation of any individual's constitutional rights under color of state law by a federal employee. Because Defendants (including Dr. Chambers) have submitted matters outside the pleadings, their Motions will be characterized as motions for summary judgment rather than motions to dismiss. *Johnson v. King*, 2010 WL 4638213, *1 (S.D. Miss. May 18, 2010) (citing *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991)).

A. Legal Standard

   a. Summary Judgment

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute of material

---

[4] Plaintiff also asserts that Dr. McMillan told him (presumably during a follow-up visit) that "[s]ince Plaintiff responded to the treatment…his eye could have been saved and or his vision could have been saved had he gotten into see him sooner." (ECF No. 1, at 4) (all sic in original). Plaintiff's medical records from his visits with Dr. McMillan neither explicitly nor implicitly express such a conviction. (ECF No. 16-4).

5

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-25. If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324-25.

The Plaintiff may not rest upon mere allegations in his Complaint, but must set forth specific facts showing the existence of a genuine issue for trial. *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). In the absence of any proof, the Court will not assume that Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

    b. <u>Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the United States Code), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

B. <u>Analysis</u>

Because Plaintiff fails to state a cognizable claim under either the FTCA or *Bivens*, Defendants' Motions (ECF No. 13); (ECF No. 16); (ECF No. 18) – which, the Court construes as motions for summary judgment – should be granted.

<u>Dr. Anthony Chambers</u>

Defendant Chambers is a medical doctor employed by the United States Public Health Service (PHS) and serving as Clinical Director for the Health Services Department at FCC Yazoo. (ECF No. 13-1, at 1). He has been employed as a commissioned officer in the PHS at FCC Yazoo since September 21, 1997. *Id*. Employees of the PHS are provided with absolute immunity against suit for harms resulting from the performance of medical or related functions within the scope of their employment. 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). This immunity precludes *Bivens* actions against PHS employees for these same harms. *Hui*, 559 U.S. at 812-13. As alleged by Plaintiff, Dr. Chambers' actions and inactions relevant to his lawsuit involve reviewing – and approving – the recommendations of Dr. Natal-Castro and contract medical doctors that Plaintiff be

7

referred to an ophthalmologist. This alleged involvement relates solely to acts and omissions done in the course of Dr. Chambers' official duties as a PHS officer. Accordingly, Dr. Chambers is entitled to the absolute immunity provided by 42 U.S.C. § 233(a), and Plaintiff's claims against Dr. Chambers must therefore be dismissed.

The United States of America

The United States of America is the only proper defendant for a claim pursuant to the FTCA, 28 U.S.C. § 1346(b). *See Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) ("[An] FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction."). "The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). Thus, "[s]tate law is 'the source of substantive liablity.'" *King v. United States*, 901 F. Supp. 2d 781, 788 (S.D. Miss. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)).

Mississippi state law provides the substantive law for medical negligence because the complained of acts and omissions occurred at FCC Yazoo. To present a prima facie case of medical malpractice under Mississippi law,

> a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony (2) identifying and articulating the requisite standard of care and (3) establishing that the

>defendant physician failed to conform to the standard of care. ... In addition, (4) the plaintiff must prove the physician's noncompliance with the standard of care caused the plaintiff's injury, as well as proving (5) the extent of plaintiff's damages.

*Robinson v. Hawkins*, 541 So. 2d 1048, 1050–51 (Miss. 1989) (quoting *Lader v. Campbell*, 515 So. 2d 882, 887-88 (Miss. 1987)). Thus, "in a medical malpractice action, negligence cannot be established without medical testimony that the defendant[s] failed to use ordinary skill and care." *Travis v. Stewart*, 680 So. 2d 214, 218 (Miss. 1996) (internal quotation marks omitted); *see also Wolfe v. United States*, No. 3:06-cv-412-HTW-LRA, 2010 WL 1374598, at *4 (S.D. Miss. Mar. 31, 2010) ("The 'negligence of a physician may only be established by expert medical testimony.'") (quoting *Palmer v. Anderson Infirmary Benevolent Ass'n.,* 656 So. 2d 790, 795 (Miss. 1995)).

Plaintiff has failed to put forth any expert medical testimony in support of his claim for negligence. For that reason alone, his claims under the FTCA must fail as a matter of law. However, the record also indicates that Dr. Natal-Castro and other FCC Yazoo staff were in no way responsible for the delay in Plaintiff's care, and therefore were not the cause of any alleged injury suffered by Plaintiff.

Kendra Pitts, the Complex Health Services Administrator at FCC Yazoo, provided an unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746, describing the arrangement between FCC Yazoo Health Services and outside contract providers. (ECF No. 18-3). Ms. Pitts explains that

>when FCC Yazoo City Health Services staff members determine that an inmate needs third-party medical care outside the institution, they generate consultation requests

> and send them directly to [the outside provider] for processing…. Generally, the timing of appointments for FCC Yazoo City inmates scheduled through [the outside provider] varies depending on the third-party provider's schedule and the time [the outside provider] took to schedule the appointment…. Despite the level of urgency placed on a consultation request generated by FCC Yazoo City Health Services, the amount of time elapsing between [the outside provider's] receipt of a consultation request and an inmate's appointment with a provider depends on [the outside provider's] processing time frame.

*Id.* at 2. Therefore, any delay between the time when FCC Yazoo staff generated a consultation request for Plaintiff to see a contract provider and the time Plaintiff met with Dr. McMillan is entirely due to (1) the time it took for Dr. McMillan's office to process the request and (2) Dr. McMillan's availability.

Plaintiff saw Nurse Chano at sick call on May 24, 2013, who made an appointment for Plaintiff to see Dr. Natal-Castro. Plaintiff saw Dr. Natal-Castro on May 28, 2013, and Dr. Natal-Castro generated a referral for Plaintiff to see a contract optometrist the same day. Plaintiff then saw the contract optometrist, Dr. Parker, on June 24, 2013. The same day, Dr. Natal-Castro and Dr. Chambers reviewed Dr. Parker's findings and Dr. Natal-Castro generated a referral for Plaintiff to see a contract ophthalmologist. Plaintiff then saw the contract ophthalmologist, Dr. McMillan, on July 16, 2013.

Contrary to Plaintiff's assertions, Plaintiff's medical records indicate that he was treated promptly and with due care by the FCC Yazoo medical staff. Dr. Natal-Castro generated referral requests the same day she saw Plaintiff and reviewed the findings of outside providers the same day Plaintiff was seen by those providers. The delays from May 28, 2013 to June 24, 2013, and from June 24, 2013 to July 16,

2013 were due to factors beyond the control of FCC Yazoo staff. From the Court's vantage point, there seems to be nothing more that FCC Yazoo staff could have done to expedite the process by which Plaintiff received care for his eye condition. Plaintiff's negligence claims against the United States of America should therefore be dismissed for failure to state a claim.

Dr. Norma Natal-Castro

Plaintiff's *Bivens* claims are only properly asserted against individuals, not entities or agencies. *F. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994). Under *Bivens*, A prisoner may seek damages against a federal officer for the violation of his or her rights under the Eighth Amendment. *Hui*, 559 U.S. at 803 n.2 (citing *Carlson v. Green*, 446 U.S. 14-17-19 (1980); *Davis v. Passman*, 442 U.S. 228, 230 (1979)).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The amendment's protection against cruel and unusual punishment prohibits deprivations that are not specifically a part of a prison sentence, but are "suffered during imprisonment." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)). This protection requires prison officials to "provide humane conditions of confinement," which includes ensuring that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

11

Determining the viability of a claim over conditions of confinement requires an inquiry into the defendant prison official's state of mind. *Wilson*, 501 U.S. at 302. Only where the prison official exhibits "deliberate indifference" towards a "substantial risk of serious harm" will an Eight Amendment violation be found. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Thus, a prisoner must prove (1) an "objective exposure to a substantial risk of serious harm," (2) the prison official's knowledge of that risk, and (3) the prison official's disregard for that risk. *Id.*

The Fifth Circuit has elaborated upon the deliberate indifference standard in the context of medical care:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Id.* at 346 (citations and internal quotation marks omitted). "Deliberate indifference is an extremely high standard to meet." *Id.* (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Even if Plaintiff could prove that he suffered an objective exposure to a substantial risk of serious harm, and that Dr. Natal-Castro had knowledge of that risk, Plaintiff has not shown that Dr. Natal-Castro disregarded that risk. The Court

has already determined that Dr. Natal-Castro's acts and omissions in providing Plaintiff with medical care did not rise to the level of medical negligence. Therefore, Dr. Natal-Castro's conduct cannot rise to the level of deliberate indifference. Plaintiff's *Bivens* claims against Dr. Natal-Castro should therefore be dismissed for failure to state a claim.

Federal Bureau of Prisons and FCC Yazoo City Medium Security Prison

The other defendants named by Plaintiff should also be dismissed with prejudice from this action. FTCA claims may only be properly asserted against the United States of America, and *Bivens* actions may only be asserted against individuals; the Federal Bureau of Prisons and FCC Yazoo City Medium Security Prison are neither. *Galvin*, 860 F.2d at 183; *Meyer*, 510 U.S. at 486. Claims against these defendants should therefore be dismissed for failure to state a claim.

III. RECOMMENDATION

The undersigned recommends that Defendant Dr. Anthony Chambers' Motion to Dismiss (ECF No. 13); Defendant Dr. Norma Natal-Castro's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 16); and Defendant United States of America's Motion to Dismiss, or in the Alternative for Summary Judgment (ECF No. 18) be GRANTED. Accordingly, Plaintiff's FTCA claims and *Bivens* claims should be dismissed with prejudice as to all Defendants.

IV. NOTICE OF RIGHT TO OBJECT/APPEAL

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve

and file written objections to the report and recommendations. A party must file objections with the clerk of the court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred except upon grounds of plain error, from attacking on appeal any proposed factual findings or legal conclusions adopted by the Court to which he did not object. *Douglas v. United Servs. Automobile Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 17th day of January, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE