# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**NATHAN JENKINS, #10914-002**                                    **PLAINTIFF**

**VS.**                                **CIVIL ACTION NO. 3:15-cv-908-WHB-JCG**

**UNITED STATES OF AMERICA, ET AL.**                             **DEFENDANTS**

## OPINION AND ORDER

This cause is before the Court on the Report and Recommendation ("R and R") of United States Magistrate Judge John C. Gargiulo. After considering the R and R, Plaintiff's Objection thereto, the other pleadings in this case, as well as relevant authorities, the Court finds the R and R should be adopted in its entirety over Plaintiff's Objections.

### I. Factual Background and Procedural History

At all times relevant to this lawsuit, Nathan Jenkins ("Jenkins") was serving a term of imprisonment at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC-Yazoo"). Jenkins alleges that when he awoke on May 24, 2013, his vision was blurred and distorted. On that same day, Jenkins reported to "sick-call", and his vision was tested by one of the on-duty nurses, Michaela Chano ("Chano"). Jenkins also requested that he be seen by a physician. On May 28, 2013, Jenkins underwent an

consultation with FCC-Yazoo physician Norma Natal-Castro, M.D. ("Natal-Castro"), who referred Jenkins for examination by a contract optometrist. Jenkins was examined by optometrist Dr. Parker ("Parker") on June 24, 2013, and was diagnosed as having had a retinal hemorrhage in his left eye. On that same day, and on Parker's recommendation, Natal-Castro requested an "ASAP" consultation for Jenkins with a retinal specialist, and approved his wearing of a eye patch. Doctor Anthony Chambers ("Chambers"), the Clinical Director at FCC-Yazoo, concurred with the recommendation that Jenkins be seen by a retinal specialist.

Jenkins was examined by contract ophthalmologist Dr. Fred McMillin ("McMillin") on July 16, 2013. McMillin confirmed that Jenkins had had a retinal hemorrhage in his left eye, which likely resulted because of defects existing in the blood vessels and lining of that eye from prior childhood infections. A cataract, that McMillin described as a clouding of the eye's lens that results in decreased vision, was also noted in the affected eye. See Mot. to Dismiss [Docket No. 16], Ex. 4, at 9. Jenkins was given an injection into his left eye, and was ordered follow-up care. When Jenkins was next examined, McMillin noted that no exposed blood vessels were seen on exam, the hemorrhage had cleared, and there was no further leakage of blood from the affected blood vessels. See id., Ex. 4, at 9. At that time, the near vision in Jenkins's left eye was measured to be 20/25, and the

far vision was 20/30. Id., Ex. 4, at 8. Jenkins had five additional follow-up appointments with McMillin beginning in December of 2013, and ending in October of 2014. In October of 2014, the near vision in Jenkins's left eye was measured to be 20/20, and the far vision was 20/30.

In December of 2015, Jenkins filed a lawsuit in this Court against the United States of America, the Federal Bureau of Prisons, FCC-Yazoo, and Doctors Chambers and Natal-Castro[1] alleging claims of medical negligence under the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. § 2671, *et seq.* The FTCA claims are predicated on allegations that Jenkins did not receive proper or timely medical care after he complained about changes in his vision.[2] Jenkins also alleged claims under Bivens v. 6 Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1981), which are predicated on allegations that the individual defendants violated his constitutional rights, as protected by the Eighth Amendment, by denying him proper and timely medical care.

---

[1] Nurses Lavonne Bose and Michaela Chano were also named as defendants, but all claims against these individuals were dismissed. See Mot. [Docket No. 12](voluntarily dismissing Bivens claims against Bose and Chano); Order [Docket No. 31] (dismissing FTCA claims against Bose and Chano on the grounds that such claims can only be maintained against the United States, and that the United States had already substituted itself as the defendant for all FTCA claims).

[2] The United States was substituted for Doctors Chambers and Natal-Castro with respect to Jenkins's FTCA/medical negligence claims pursuant to 28 U.S.C. § 2679.

3

The United States and Doctors Chambers and Natal-Castro each filed motions seeking the dismissal of, or in the alternative summary judgment on, Jenkins's claims. The Motions came before United States Magistrate Judge John C. Gargiulo who entered a R and R recommending that all of the Motions for Summary Judgment be granted, and the remaining defendants be dismissed because viable claims had not been alleged against them. See R and R [Docket No. 44]. The Court now considers Jenkins's Objections to the R and R.

**II. Discussion**

Under Rule 72(b) of the Federal Rules of Civil Procedure, a district judge has the authority to review a magistrate judge's report and recommendation and, upon the filing of a proper, timely objection, must conduct a *de novo* review. Koetting v. Thompson, 995 F.2d 37, 40 (5th Cir. 1993)(citations omitted). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3).

In addition to filing his Objection, Jenkins filed a Motion seeking to supplement the record to include a January 2017, medical report evidencing that he had been taken to the emergency room for complaints of abdominal pain. See Mot. to Supplement [Docket No. 45]. Because the medical report was generated almost three years after the time period relevant to this lawsuit, and has no bearing

4

on the treatment/condition of Jenkins's left eye, the Court finds no basis for supplementing the record to include the medical report. Jenkins's Motion to Supplement will, therefore, be denied.

As regards the R and R, Jenkins first objects "to all theories and grounds that the Honorable US Magistrate Judge has used in his Report and Recommendation." See Objection [Docket No. 45], at Obj. #1. The Court finds this Objection does not comply with the requirements of Rule 72(b) under which written objections must be "specific". See FED. R. CIV. P. 72(b)(providing that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge.)(emphasis added). Accordingly, the Court finds Jenkins is not entitled to relief based on this Objection. The Court will now consider the specific objections made by Jenkins.

In his Objection, Jenkins argues that Judge Gargiulo abused his discretion by failing to appoint him counsel in this case. See Objection, at Obj. #4. As to this Objection, the Docket shows Jenkins's Motion for Counsel was denied on a finding that he had not shown that any exceptional circumstances existed in this case that would warrant such appointment. See Order [Docket No. 43]. Because Jenkins's Motion for Counsel addressed a non-dispositive matter, the Order denying that Motion is reviewed pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, which permits the modifying or setting aside of a magistrate's order upon a finding

5

that it is "clearly erroneous or is contrary to law." On review, the Court finds that the Order by which Jenkins's Motion for Counsel was denied is neither clearly erroneous nor contrary to law. Accordingly, the Court finds Jenkins is not entitled to relief based on this Objection.

Next, Jenkins objects to the R and R by arguing that he had stated claims upon which relief could be granted and, therefore, any dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure was erroneous. <u>See</u> Objection, at Obj. #2. It is clear from the R and R, however, that Jenkins's claims were not reviewed and/or considered for dismissal under Rule 12(b)(6). Instead, Judge Gargiulo considered Jenkins's claims using a summary judgment standard. <u>See</u> R and R, at 5-6. Accordingly, the Court finds Jenkins is not entitled to relief based on this Objection. Jenkins also argues that the grant of summary judgment was premature because his Motion for Counsel had been denied. <u>See</u> Objection, at Obj. #3. Under the Federal Rules of Civil Procedure, however, motions for summary judgment may be filed "at any time", <u>see</u> FED. R. CIV. P. 56(b), and there is nothing in those rules that prohibits the filing of a motion for summary judgment against a party who is proceeding pro se. Accordingly, the Court finds Jenkins is not entitled to relief based on this Objection.

Jenkins objects to Judge Garguilo's reliance on the unsworn declaration of Kendra Pitts ("Pitts") when considering the Motions

6

for Summary Judgment. See Objection, at Obj. #7. In accordance with 28 U.S.C. § 1746, however, unsworn declarations may be considered as evidence in federal proceedings as long as the individual making the declaration declares "under the penalty of perjury" that his or her statement is "true and correct." See 28 U.S.C. § 1746(2). See also Carter v. Clark, 616 F.2d 228, 230 (5th Cir. 1980)(explaining that 28 U.S.C. § 1746 "was passed ... for the purpose of permitting the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits.")(internal quotations omitted). Pitts's Declaration contains the following provision: "Pursuant to Title 28, United States Code, Section 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief", see e.g. Mot. of United States for Sum. J. [Docket No. 18], Ex. 3 (Pitts Dec.). As Pitts's Declaration complies with the requirements of Section 1742, the Court finds Judge Gargiulo did not err in considering that declaration when considering the Motions for Summary Judgment. Accordingly, the Court finds Jenkins is not entitled to relief based on this Objection.

Jenkins's next objection pertains to the findings and/or recommendations regarding immunity. In the R and R, Judge Gargiulo recommended that Dr. Chambers, a doctor employed by the United States Health Service ("PHS"), be granted summary judgment on the Bivens claims alleged against him because such claims are barred by

7

the absolute immunity provided under 42 U.S.C. § 233(a). See R and R, at 7-8. Jenkins argues that the finding of immunity was erroneous because he alleged a valid constitutional rights violation against Chambers, namely that Chambers violated the Eighth Amendment by acting with "deliberate indifference" with respect to Jenkins's being provided timely medical treatment for his eye. Having reviewed the pleadings, the Court agrees that Chambers is immune from liability on Jenkins's <u>Bivens</u> claims.

In the case of <u>Hui v. Castaneda</u>, 559 U.S. 799 (2010), the United States Supreme Court was asked to consider whether the immunity provisions of 42 U.S.C. § 233(a) applied to <u>Bivens</u> claims asserted against employees of the PHS. On review, the Supreme Court held: "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct", including <u>Bivens</u> actions. <u>Id.</u> at 806. Here, there were no genuine issues of material fact with respect to whether Chambers was an officer/employee of the PHS, or whether the decisions he made with respect to Jenkins's medical care were made while he was acting in his capacity as Clinical Director for the Health Services Department at FCC-Yazoo. See Mot. [Docket No. 13], Ex. 1 (Chambers Dec.). Under these circumstances, Chambers is shielded by the absolute immunity provided under 42 U.S.C. § 233(a) and, therefore,

cannot be held liable on Jenkins's Bivens claims. Accordingly, the Court finds Jenkins is not entitled to relief based on his immunity-related Objection.

The Court next considers Jenkins's objections with respect to his FTCA claims. See Objection, at Objs. #2 and #6. In his R and R, Judge Gargiulo recommended that summary judgment be granted with respect to Jenkins's FTCA claim on findings that he had not put forth any expert medical testimony to support his claims, and the delay in his being treated by an ophthalmologist could not be attributed to the actions of Defendants. See R and R, 8-11. In his Objection, Jenkins argues that there are two "major disputes" in this case, the first is whether the impairment in his vision resulted because of "the enlarged blood vessels that developed from lack of proper and expedited medical care." Objection, at 3. There is no evidence in the record, however, to support this argument.

The United States Court of Appeals for the Fifth Circuit has held that "under Mississippi law, the plaintiff may only recover on his medical malpractice claim when the evidence shows 'that proper treatment would lead to a greater than fifty (50) percent chance of a better result than was in fact obtained.'" Massey v. United States, 565 F. App'x 326, 328 (5th Cir. 2014)(citing Estate of Sanders v. United States, 736 F.3d 430, 437 (5th Cir. 2013))(other internal citations omitted). Here, there is no evidence that the

"enlarged blood vessels" in Jenkins's left eye resulted because of a "lack of proper and expedited medical care." The physician notes from Jenkins's own treating ophthalmologist, McMillin, do not suggest or otherwise imply that the defects existing in the blood vessels and lining of Jenkins's left eye resulted from delayed treatment. See Mot. to Dismiss [Docket No. 16], Ex. 4, at 9. Instead, those notes make clear that the existing defects were most likely caused by prior childhood infections. Id.

The second "major dispute" identified by Jenkins is the "alleged delay in treatment that [he] received." Objection, at 3. As to this argument, the record shows that after Jenkins complained of distorted vision on May 24, 2013, he reported to the infirmary where his vision was examined by the on-duty nurse. Jenkins was then examined by Dr. Natal-Castro on May 28, 2013, who, on that same day, generated a request that Jenkins be referred to a contract optometrist. According to Pitts, who serves as the Complex Health Services Administrator for FCC-Yazoo, that facility contracts with a third-party scheduling service, Seven Corners, to schedule appointments for inmates who need to be seen by local medical specialists. See e.g. Mot. for Sum. J., Ex. 3 (Pitts Dec. at ¶ 4). Pitts further declares that after a referral request is generated by the prison staff, Seven Corners contacts the requested specialist and schedules the appointment. Id. at ¶¶ 5-6. Appointments are scheduled based on the availability of the

10

specialist, that is when the specialist is able to see the inmate in his or her office. Id. Jenkins was examined by contract optometrist Parker on June 24, 2013, who determined that Jenkins needed to be seen by a retinal specialist/ophthalmologist because he had had a retinal hemorrhage in his left eye. On that same day, Doctor Natal-Castro reviewed Parker's findings on examination, and generated a request that Jenkins be referred to a contract ophthalmologist "ASAP". Jenkins was seen by contract ophthalmologist McMillin on July 16, 2013, and continued to be treated by McMillin until October of 2014.

Based on the evidence in the record, the Court finds Judge Gargiulo did not err in recommending that summary judgment be granted in favor of the United States on Jenkins's medical malpractice/FTCA claims. This is because there is no evidence in the record, and therefore no genuine issues of material fact, as to whether the enlarged blood vessels in Jenkins's left eye were caused by the alleged delay in treatment, and there is no evidence that the delay in Jenkins's being seen by an ophthalmologist was attributable to any actions taken by the prison staff. Accordingly, the Court finds Jenkins is not entitled to relief based on his FTCA claim-related Objections.

Jenkins next objects to Judge Gargiulo's findings that Natal-Castro had not acted with deliberate indifference with respect to the medical care she provided, and his recommendation that Natal-

11

Castro be granted summary judgment on the Bivens claims alleged against her. See Objection, at Obj #8. As cited by Judge Gargiulo, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment." See R and R, at 12 (quoting Golbert v. Caldwell, 463 F.3d 339, 345-46 (5th Cir. 2006)). Instead, "[a] showing of dileberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (citing Golbert, 463 F.3d at 346). Here the record shows that Natal-Castro examined Jenkins after he complained of problems with his vision, she immediately generated requests that Jenkins be seen by local specialists for his eye problems, she promptly responded to his requests for information as to when he would be seen by the specialists, and she permitted the medical treatment ordered by the contract physicians. Although Jenkins argues that Natal-Casto disregarded policy by failing to immediately send him to a hospital for treatment, his "[d]isagreement with [the] medical treatment [he was provided] does not state a claim for Eighth Amendment indifference to medical needs." Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). See also Trujilo v. Arce, 109 F. App'x 668, 670 (5th Cir. 2004)("A prisoner's disagreement with prison

officials regarding medical treatment is insufficient to establish an unconstitutional denial of medical care."). Because there is no evidence that Natal-Castro ignored Jenkins's complaints or refused to provide treatment for him, the Court finds Judge Gargiulo did not err in finding that there did not exist fact issues regarding whether Natal-Castro had acted with deliberate indifference to Jenkins's medical problems. Accordingly, the Court finds Jenkins is not entitled to relief based on the Objections made with respect to the findings/recommendations pertaining to Natal-Castro.

Finally, Jenkins objects to Judge Gargiulo's findings that the FTCA and Bivens claims he alleged against the Federal Bureau of Prisons ("BOP") and FCC-Yazoo were barred as a matter of law. See Objection, Obj. #9. In the R and R, Judge Gargiulo found that Jenkins could not proceed with his FTCA and Bivens claims against the BOP and FCC-Yazoo on the grounds that FTCA claims can only be alleged against the United States, and Bivens claims can only be alleged against individuals. See R and R, 13. The Court finds no error in Judge Gargiulo's findings. See e.g. Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988)(holding: "[A] suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of government agencies or employees."); FDIC v. Meyer, 510 U.S. 471, 486 (1994)(finding that Bivens actions can not be maintained against agencies of the federal government). Because FTCA and Bivens claims cannot be brought against the BOP or

13

FCC-Yazoo, the Court finds Jenkins is not entitled to relief on this objection.

After conducting a *de novo* review of the portions of the R and R to which Jenkins objected, the Court finds the R and R is well reasoned and supported by applicable law. Accordingly, the Court will adopt the R and R over Jenkins's objections.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Report and Recommendation of the Magistrate Judge [Docket No. 44] is hereby accepted and adopted over Plaintiff's Objection.

IT IS FURTHER ORDERED that Plaintiff's Motion to Supplement Record [Docket No. 46] is hereby denied.

IT IS FURTHER ORDERED that Plaintiff's Objection to the Report and Recommendation [Docket No. 45] is hereby overruled.

IT IS FURTHER ORDERED that Defendants' Motions for Summary Judgment [Docket Nos. 13, 16, and 18] are all hereby granted.

A Final Judgment dismissing this case with prejudice shall be entered this day.

SO ORDERED this the 7th day of March, 2017.

    s/ William H. Barbour, Jr.
    UNITED STATES DISTRICT JUDGE